KATZMELINGER
280 MADISON AVENUE, SUITE 600
NEW YORK, NEW YORK 10016
www.katzmelinger.com

| | |
|---|---:|
| Nicole Grunfeld | t: 212.460.0047 |
| Katz Melinger PLLC | f: 212.428.6811 |
| | ndgrunfeld@katzmelinger.com |

December 5, 2020

**Via ECF**
Honorable Leda Dunn Wettre
United States District Court, District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07101

  **Re:**  *Geovani Villalta v. NTN Brothers Corporation et al.*
     **Civil Action No. 2:20-CV-08911-MCA-LDW**

Your Honor:

  We are attorneys for the plaintiff, Geovani Villalta ("Plaintiff"), and write jointly with counsel for defendants NTN Brothers Corporation d/b/a as Chillers Grill ("Chillers Grill"), Terek Ebid, and Nick Stathatos (collectively the "Defendants") to seek approval of their agreement to settle Plaintiff's claims, which include claims for overtime violations pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a(4) ("NJWHL"); failure to timely pay wages pursuant to the New Jersey Wage Payment Law, N.J.S.A. 34:11-4.1, *et seq.* ("NJWPL"); and fraudulent filing of information returns pursuant to the Internal Revenue Code, 26 U.S.C. § 7434. Plaintiff and Defendants write to respectfully request that the Court approve the settlement agreement between them, a copy of which is attached hereto as **Exhibit 1**, and allow them to discontinue the matter with prejudice, pursuant to Fed. R. Civ. P. 41 (a)(2).

  **1. Summary of Plaintiff's Claims**

  This matter arises out of Plaintiff's employment with Defendants. Plaintiff alleges that he was employed by Defendants as a chef from in or around June 2015 until on or around September 15, 2019. As a chef, Plaintiff's principal job duties included chopping meats and vegetables, preparing a variety of dishes on the menu to be served to customers, and cleaning the kitchenware and his work area. Throughout his employment with Defendants, Plaintiff alleges that he regularly worked Tuesdays through Sundays, from approximately 7:00 a.m. until 3:00 p.m., with a daily fifteen (15) minute lunch break, for a total of approximately forty-six and one-half (46.5) hours per week. Plaintiff alleges that throughout his employment, he was compensated at a fixed weekly

salary, ranging from $1,200.00 to $1,525.00, regardless of the number of hours that he worked each week, and that he was not paid any overtime wages.

### 2. Defendants' Position

Defendants disagree with Plaintiff's allegations. Regarding Plaintiff's wage and hour claims, Defendants allege that, throughout his employment, Plaintiff worked an average of approximately forty-five (45) hours per week, and he was paid properly for all hours worked, including overtime hours. Defendants provided Plaintiff's counsel with certain payroll and timekeeping documents which purportedly demonstrate that Plaintiff was correctly paid for all hours worked. Regarding Plaintiff's claims for fraudulent filing of information returns, Defendants assert that Plaintiff is not entitled to any damages for any alleged fraudulent information returns because Plaintiff did not suffer any damages, and because his claim is untimely. Finally, Defendants assert that this matter is governed by a binding arbitration agreement signed by both parties and that this matter belongs in arbitration. Defendants provided Plaintiff's counsel with a copy of said arbitration agreement.

While Plaintiff and Defendants continue to express opposing views on the likely outcome of this matter, they understand that the complex factual issues in this matter would likely require a trial, and that each of them would expend significant time and costs to prepare for trial. While Plaintiff and Defendants have agreed to a settlement, there remains significant disagreement over the amount of alleged overtime hours worked by Plaintiff, the amount and manner in which Plaintiff was compensated, the authenticity of certain documents, and the enforceability of the arbitration agreement. With such uncertainty on both sides, the risk to Defendants of a substantial judgment against them, and the risk to Plaintiff of failing to prevail on all of his claims, the amount agreed to by Plaintiff and Defendants represents a fair and reasonable settlement at such an early stage of the litigation.

### The Proposed Settlement Should Be Approved

1. The Settlement Resolves Bona Fide Disputes and is Fair and Reasonable to Plaintiff

To approve an FLSA settlement agreement in the Third Circuit, the court must determine whether "the compromise reached is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Davis v. Essex Cty.*, 2015 WL 7761062, at \*2 (D.N.J. Dec. 1, 2015) (internal quotations and citations omitted). "In determining whether the compromise resolves a bona fide dispute, the Court must be reassured that the settlement 'reflect[s] a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching,' and the bona fide dispute must be determined to be one over 'factual issues' not 'legal issues such as the statute's coverage or applicability.'" *Brumley v. Camin Cargo Control, Inc.,* 2012 WL 1019337, at \*2 (D.N.J. Mar. 26, 2012) (citations omitted). District courts in the Third Circuit typically consider the factors set forth in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir.1975) in determining whether a FLSA settlement is fair and reasonable. *Cruz v. JMC Holdings, Ltd.*, 2019 WL 4745284, at \*4 (D.N.J. Sept. 30, 2019). Those factors are: "...(1) the complexity, expense and likely duration of the litigation ...; (2) the reaction of the class to the settlement ...; (3) the stage of the proceedings and the amount of discovery completed ...; (4) the risks of establishing

liability ...; (5) the risks of establishing damages ...; (6) the risks of maintaining the class action through the trial ...; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery ...; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation ...." *Id.* (citing *Girsh*, 521 F.2d at 157).

The proposed settlement agreement between Plaintiff and Defendants reflects a reasonable compromise of bona fide disputes regarding Plaintiff's claims, rather than a mere waiver of statutory rights brought about by Defendants' overreaching. To the contrary, Plaintiff is represented by competent counsel and the proposed agreement resolves bona fide disputes as to Plaintiff's ability to recover unpaid overtime wages and other damages. Specifically, Plaintiff alleges that throughout his employment, he regularly worked an average of forty-six and one-half (46.5) hours per week, that he was paid a flat weekly rate, regardless of the number of hours worked per week, and that he did not receive any overtime wages. However, Defendants deny that Plaintiff was not compensated for overtime hours and have provided Plaintiff with documents purportedly reflecting that fact. Similarly, Plaintiff's allegations that he is entitled to damages for fraudulent filing of information returns are vigorously denied by Defendants.

Moreover, the proposed settlement agreement is fair and reasonable to Plaintiff. The settlement amount, $12,500.00, results in a recovery to Plaintiff of $7,746.67, after expenses and proposed attorneys' fees. This sum is fair and reasonable given the early stage at which the settlement was reached; the risk that Plaintiff would not prevail on all of his claims after a trial; and the fact that Plaintiff will receive the entire settlement amount shortly after the Court's approval of the settlement agreement. Furthermore, Plaintiff and Defendants engaged in extensive negotiations and, through informal discovery, gathered and exchanged information relevant to the claims and defenses in this matter; they can therefore accurately assess the strengths and weaknesses of the asserted claims and their respective positions. *Cruz*, 2019 WL 4745284, at *5 (concluding that the parties appreciated the merits of the case because, *inter alia*, the parties engaged in informal discovery of relevant documents and various arm's-length negotiations). Although Plaintiff and Defendants hold opposing views on the merit and value of Plaintiff's claims, the arm's length bargaining between such represented parties, along with the information shared uncovered through informal discovery, weigh in favor of finding the settlement reasonable.

2. The Settlement Furthers the Implementation of the FLSA

As further explained above, Plaintiff and Defendants hold opposing views on the merit and value of Plaintiff's claims. However, Defendants have produced documents purportedly demonstrating that Plaintiff was properly compensated throughout his employment, and that this matter belongs in arbitration. Thus, Plaintiff faces the difficult task of proving that the documents produced by Defendants are unauthentic and that the arbitration agreement purportedly signed by Plaintiff and Defendants is unenforceable. Given Plaintiff's concerns about this task, there is a risk to Plaintiff that he will be unable to prevail on any of his claims if a fact finder were to determine that Defendants' documents are authentic and the arbitration agreement enforceable. By reaching a settlement with Defendants, Plaintiff avoids the substantial risk of receiving an unfavorable outcome in this matter. Furthermore, the agreement provides that Plaintiff will receive the entire

settlement amount in one lump sum payment shortly after the Court's approval of the proposed settlement agreement, which is highly favorable to Plaintiff.

Lastly, the proposed settlement agreement between Plaintiff and Defendants is devoid of any provisions that would frustrate the implementation of the FLSA. Specifically, the proposed agreement's confidentiality provision is narrowly drawn, and only limits disclosure of the negotiations with respect to the agreement. Thus, the clause restricts Villalta from publicizing negotiations, but does not prohibit him or others from discussing the underlying facts or the terms of settlement with other employees of Defendants. A limited confidentiality provision, such as this one, has been found to not frustrate the goals of the FLSA. *See Atis v. Freedom Mortg. Corp.*, No. CV 15-03424 (RBK/JS), 2018 WL 5801544, at *4 (D.N.J. Nov. 6, 2018). Furthermore, the proposed agreement's release clause is limited in scope, as Plaintiff is only releasing claims related to this action. Specifically, the proposed agreement identifies that the releases and waivers in the agreement apply to the FLSA, NJWHL, NJWPL, and the Internal Revenue Code. This district has found that such a limited release clause does not frustrate the purposes of the FLSA. *See Cruz v. JMC Holdings, Ltd.*, No. CV169321KSHCLW, 2019 WL 4745284, at *8 (D.N.J. Sept. 30, 2019) (approving a release that was limited to the claims asserted in the action).

   3. Plaintiff's counsels' fees are reasonable

Plaintiff and his counsel maintain that the proposed amount of attorneys' fees is also fair and reasonable. "[T]he percentage-of-recovery method has been accepted as an established approach to evaluating the award of attorneys' fees in the Third Circuit." *Brumley*, 2012 WL 1019337, at *9. Under the percentage-of-recovery method, fee awards ranging from 19 percent to 45 percent of the settlement fund have been deemed reasonable. *Id.* at *12; *see also, Davis*, 2015 WL 7761062, at *5. Under the proposed agreement between Plaintiff and Defendants, Plaintiff's counsel would recover $880.00[1] as reimbursement for costs and expenses, and $3,873.33 in fees. Under Plaintiff's contingency fee agreement, Plaintiff's counsel is entitled to recover out of Plaintiff's settlement amount fees totaling one-third (1/3) of any amounts recovered on behalf of Plaintiff, as well as costs and expenses, which is reasonable. *Brumley,* 2012 WL 1019337, at *12 ("Counsel's request for one-third of the settlement fund falls within the range of reasonable allocations in the context of awards granted in other, similar cases").

Moreover, a lodestar crosscheck also supports Plaintiff's counsel's fee request. As indicated by Plaintiff's counsel's time records, attached hereto as **Exhibit 2**, Plaintiff's counsel has spent a total of 31.20 hours on this matter as follows: Nicola Ciliotta, 24.80 hours; and Nicole Grunfeld, 6.40 hours. Plaintiff's counsels' hourly rates - $435.00 and $285.00, respectively – are reasonable based on their experience and are in line with the rates charged by attorneys in this district. *Santiago v. Lucky Lodi Buffet Inc.*, 2016 WL 6138248, at *4 (D.N.J. Oct. 21, 2016) (approving an hourly rate of $450.00 per hour for a law firm partner and $375.00 per hour for an associate with approximately 4 years of employment law experience); *see also*, *Jian Zhang v. Chongqing Liuyishou Gourmet NJ Inc*, 2019 WL 6318341, at *4 (D.N.J. Nov. 26, 2019) (approving an hourly rate of $550.00 per hour for a law firm partner and $350.00 for a managing associate); *Punter v. Jasmin Int'l Corp.,* 2014 WL 4854446, at *7 (D.N.J. Sept. 30, 2014)

---

[1] The costs and expenses are as follows: $400.00 for the filing fee; and $480.00 for process server costs.

(approving an hourly rate of $300.00 per hour for an associate with "over two years of litigation experience and a substantial portion of his practice relates to representation of employment matters").

Ms. Grunfeld has been the senior associate at Katz Melinger PLLC for more than seven years. She earned her B.A. in 1998 from Yale University, and her J.D. in 2004 from New York University School of Law. Ms. Grunfeld was admitted to practice in the courts of New York in 2005 and New Jersey in 2018, and has focused on Plaintiff's employment matters for more than twelve years.

Mr. Ciliotta earned his B.A. from Vanderbilt University in 2015 and his J.D. from Penn State Law School in 2018; he was admitted to practice in New York in 2019 and is pending admission in New Jersey. Since joining Katz Melinger PLLC in 2018, Mr. Ciliotta has focused his practice on all aspects of employment litigation, with a particular focus on wage and hour cases.

The $3,873.33 fee sought by Plaintiff's counsel is significantly less than Plaintiff's counsel's "lodestar" amount of $9,852.00. Moreover, Plaintiff voluntarily agreed, both at the time of settlement and at his initial engagement of counsel, to a one-third fee arrangement, Plaintiff's counsel's fees should be found reasonable. *Davis*, 2015 WL 7761062, at *5 (finding that a lodestar crosscheck supported counsel's fee request as the lodestar amount exceeded the fee sought by plaintiff under their agreement); *see also*, *Brumley*, 2012 WL 1019337, at *12.

Accordingly, Plaintiff and Defendants respectfully request judicial approval of their proposed settlement agreement, and further request permission to submit a stipulation of discontinuance with prejudice consistent with the requirements of Fed. R. Civ. P. 41(1) (a) (ii) as to Defendants.

Respectfully submitted,

| | |
|---|---|
| */s/ Nicole Grunfeld* | */s/ Sandra M. Barsoum* |
| Nicole Grunfeld | Sandra M. Barsoum |
| Katz Melinger PLLC | Kates Nussman Ellis & Farhi LLP |
| 280 Madison Avenue, Suite 600 | 190 Moore Street, Suite 306 |
| New York, New York 10016 | Hackensack, New Jersey 07601 |
| (212) 460-0047 | (201) 488-7211 |
| ndgrunfeld@katzmelinger.com | sbarsoum@nklaw.com |
| *Attorneys for Plaintiff* | *Attorneys for Defendants* |